

CLERK'S OFFICE
A TRUE COPY
**May 19, 2023**
**s/ D. Olszewski**
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>The cellular telephone assigned call number 414-526-1156<br>(the "Target Cell Phone"), whose wireless service provider<br>is AT&T, as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.    23    MJ    107 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

❏ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2119; 924(c); 844 (i); and 844(h) | Carjacking; Use of a firearm during the commission of a violent crime; Use of fire to damage property affecting interstate commerce; and Use of fire in furtherance of a federal felony. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Digitally signed by RICKY HANKINS
DN: c=US, o=U.S. Government, ou=Dept of Justice, ou=ATF, cn=RICKY HANKINS, 0.9.2342.19200300.100.1.1=1500100169 9456
Date: 2023.05.18 09:38:02 -05'00'*

_____
*Applicant's signature*

ATF SA Rick Hankins
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ 5/19/2023 _____

_____
*Judge's signature*

City and state: _____ Milwaukee, WI _____     Honorable William E. Duffin, U.S. Magistrate Judge
_____
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Rick Hankins, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 414-526-1156 (the "Target Cell Phone"). This information is in the custody or control of AT&T, a cellular service provider headquartered at 208 South Akard Street, Dallas, Texas. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1).

3.      I am a Special Agent of the U.S. Department of Justice's ATF, currently assigned to the Milwaukee Field Office. I have been so employed since April 2003. My duties as a Special Agent with the ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes.

4.      I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia, as well as the ATF National Academy.  That

1

training included various legal courses related to constitutional law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as interviewing, surveillance, and evidence collection.

5. In addition to my duties as a criminal investigator, I am also an ATF Certified Fire Investigator (CFI). As an ATF CFI, I am tasked with providing expert opinions as to the origin and cause of fires. I obtained the ATF CFI certification in 2009 following a two-year training program that centered on various fire science topics including, but not limited to: chemistry, fire dynamics, and building construction. The two-year ATF CFI certification program consisted of college courses, written exams, research papers, reading assignments, practical training exercises, and test burns of various materials. I am re-certified annually as an ATF CFI. To date, I have participated in over 295 fire scene examinations and have testified as an expert. Additionally, I have been certified as a fire investigator by the International Association of Arson Investigators since June 2011. I have received over 1,600 class hours of fire-related training. Furthermore, I have been an instructor regarding fire-related topics on multiple occasions for the following agencies and institutions: The National Fire Academy (FEMA), International Association of Arson Investigators Chapter 25, Waukesha County Technical College, and Blackhawk Technical College. I have also participated in over 223 live fire training exercises, where I started training fires and observed fire growth and development. Finally, I was a full-time instructor at the ATF National Academy from approximately August 2015 to August 2016, where I taught several topics during Special Agent Basic Training for new ATF recruits. Specifically, I was a primary instructor for the arson block of training at the ATF Academy.

2

6.    I have previously applied for and received search warrants related to cell site data and other related cellphone company records.

7.    This affidavit is based upon my personal knowledge as well as information provided to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon information gathered from interviews of citizen witnesses, reports, official records, law enforcement reports, and my training and experience.

8.    Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime), Title 18 U.S.C. §§ 844(i) (use of fire to damage property affecting interstate commerce), and Title 18 U.S.C. §§ 844(h) (use of fire in furtherance of a federal felony) have been committed.  There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B. Specifically, I believe there is probable cause to locate The Target Cell Phone, in an attempt to seize The Target Cell Phone as it is believed The Target Cell Phone contains communications related to the aforementioned crimes.

9.    The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

### PROBABLE CAUSE

10.    On February 19, 2023, at approximately 5:43AM, the Milwaukee Police Department responded to a shooting near 1727 West Mineral Street, Milwaukee, Wisconsin

3

**("Location 1")**. Upon their arrival, police subsequently located A.A., who had been shot multiple times. A.A. was found lying on the front porch of XXXX South 18th Street and transported to a hospital.

11. The Milwaukee Police Department later interviewed A.A. who stated he and his friend, C.B., were at Potawatomi Casino and then went to a party near South 34th Street and West Pierce Street in Milwaukee **("Location 2")**. A.A. said he was driving a Chrysler 300 car that had been rented by his brother, who was later identified as M.A. As he and C.B. left the party and were walking to the Chrysler 300, A.A. said they were approached by 5 unknown black males wearing ski masks and carrying firearms. A.A. stated he was struck multiple times in the head by the suspects' firearms while the suspects demanded to know where "the money was." A.A. stated he told the suspects he did not know what they were talking about. A.A. further said the suspects went through his pockets and took his money, necklace, grills, cellphone **[phone # (262) 283-2021],** and keys to the Chrysler 300 rental car. A.A. said he and C.B. were then forced at gunpoint into the suspects' white SUV. A.A. stated the suspects drove him and C.B. to C.B.'s address after C.B. provided his address. A.A. said the suspects exited the SUV at one point, at which time he exited the SUV and attempted to run away. A.A. stated he heard multiple gunshots and was struck multiple times in his leg, ankle, and foot. A.A. believed C.B. was targeted for the robbery because C.B. has posted social media videos in which C.B. had flashed a lot of money.

12. The Milwaukee Police Department also interviewed C.B, who was located at his residence - XXXX West Mineral Street. C.B. stated he posted a message on Facebook on February 18, 2023, asking if anyone wanted to go out. C.B. said he received a phone call from A.A., who he has known since high school. C.B. stated he and A.A. made plans to go out

4

together. C.B. said A.A. picked him up in a 4-door Chrysler rental car. C.B. stated he, A.A., and their friend "Michael" first went to Element Nightclub in downtown Milwaukee and then to Potawatomi Casino. While at the casino, C.B. stated he received a phone call from a female he knew as "Pat" who invited him to a party near South 34th Street and West Pierce Street in Milwaukee. C.B. further said he is friends with "Pat" on social media. C.B. stated he and A.A. dropped Michael at home before going to the party. C.B. said he and A.A. stayed at the party for approximately 45-60 minutes and then left. As they were approaching A.A.'s Chrysler rental car, C.B. said two unknown vehicles stopped by them and five unknown male suspects (suspects) exited one of the vehicles. All five were wearing masks. C.B. further said the masked suspects pointed firearms at C.B. and A.A. and C.B. was struck in the head with firearms prior to being forced into the suspect vehicle. C.B. said the suspects went through his pockets and took $200 cash and his Apple iPhone. C.B. said the suspects asked where they lived and C.B. provided his home address – XXXX West Mineral Street. C.B. further said A.A. fled the vehicle when they arrived at his address, so he also fled from the vehicle, ran into XXXX West Mineral Street, and did not come out until police arrived.

13. The Milwaukee Police Department recovered (24) 9mm ammunition casings from the shooting scene near 1727 West Mineral Street.

14. On February 19, 2023, at approximately 6:45AM, the Milwaukee Police and Fire Departments responded to a vehicle fire at 227 East Townsend Street, Milwaukee, Wisconsin **("Location 3")**. The burned vehicle was identified as a 2020 grey Chrysler 300 with WI license plate #11294AFT (VIN # 2C3CCAGG3LH146281), which was the same vehicle rented on February 18, 2023, by M.A. from Enterprise Car Rental located 5300 South Howell Avenue in Milwaukee, Wisconsin. A 911 caller stated they observed a black male suspect standing near the

5

vehicle within seconds of the vehicle being engulfed in flames. The black male was wearing black clothing with a black face mask. Under these circumstances, I believe the rental car was a vehicle used in interstate commerce that was intentionally destroyed by means of fire.

15.     The (24) 9mm ammunition casings recovered from the 1727 West Mineral Street shooting scene were later examined by an ATF National Integrated Ballistic Information Network (NIBIN) Correlation Specialist who determined the 24 ammunition casings were fired from two separate firearms.  Furthermore, the NIBIN Correlation Specialist found that one of the firearms used during the 1727 West Mineral Street shooting also showed a significant correlation to a firearm used during a shooting in West Allis, Wisconsin on January 3, 2023.  The West Allis Police Department recovered (7) 9mm ammunition casings near 7527 West Becher Street, West Allis, Wisconsin **("Location 4")** following a reported shooting near that address at approximately 2:00PM on January 3, 2023 (West Allis Police Department Case #23-000288). The NIBIN correlation between the two shooting scenes and the recovered casings have not yet been confirmed by microscopic comparison, but the similarities are significant and resulted in a NIBIN Hit.

16.     On February 28, 2023, ATF interviewed C.B. and C.B. stated the party near 34th Street and Pierce Street was held inside a photography studio on the first floor of a commercial building.  C.B. used digital Google Streetview images on Your Affiant's cellphone and initially identified 3530 West Pierce Street as the building where the party was held.  Additionally, C.B. said an unknown Hispanic male traveled with C.B. and A.A. to the party.  C.B. stated the unknown Hispanic male was an associate of A.A. who they ran into earlier that same night.

17.     Also on February 28, 2023, ATF Agents canvassed the area of 3530 West Pierce Street and found that address to be a U-Haul self-storage building.  ATF Agents then contacted a

6

remodeling construction crew that working at the commercial building located at 3600 West Pierce Street.  The construction crew stated that 3600 West Pierce Street had a photography studio on the first floor, which was unlocked and open.  ATF Agent also contacted a resident at XXXX South 36th Street who had exterior surveillance cameras that faced toward the intersection of West Pierce Street and South 36th Street, and also captured the front door of 3600 West Pierce.  Agents viewed the surveillance video from February 19, 2023 and observed the 2020 Chrysler 300 arrive at approximately 4:36AM and park immediately across the street from the front door of 3600 West Pierce Street.  Three individuals exited the Chrysler and subsequently entered 3600 West Pierce Street.  The surveillance video also captured a white Jeep SUV travel by 3600 West Pierce Street on three occasions between 4:43AM and 4:46AM.  What appeared to be the same white Jeep SUV backed into the north/south alley between 3600 West Pierce Street and 3530 West Pierce Street at approximately 4:54AM.  The surveillance camera showed C.B., A.A., and the unknown male exit 3600 West Pierce Street at approximately 5:17AM and walk to the Chrysler 300.  A.A. had opened the driver's door and C.B. was near the middle of West Pierce Street when four suspects emerged from the area of the white Jeep SUV and appeared to point firearms at the victims at which time the victims got on the ground.  The video showed suspects remove the shirt from C.B. and leave it in the road.  The video further showed C.B. and A.A. were ushered by the suspects into the white Jeep SUV while the unknown third male appeared to be placed in the Chrysler 300.  The white Jeep SUV then traveled south on South 36th Street followed by the Chrysler 300, which was presumably driven by a suspect.

18.     Based on my training and experience, individuals carry their cellular phones on their person or in a very close vicinity whether it is day or night. Further, most individuals have

7

their own cellular phones, so it is likely the subject(s) cellular phone is using and/or registering with the cellular tower providing service in the general geographic area of the crime.

19. On March 9, 2023, Your Affiant received records from T-Mobile related to Federal search warrant #23-M-303. The records included Timing advance "True Call" data related to devices that were within the vicinity of the four aforementioned crime locations in Milwaukee, those being 3600 W. Pierce Street (Location 2), 1727 W. Mineral Street (Location 1), 227 East Townsend Street (Location 3), and the West Allis shooting location at 7527 West Becher Street (Location 4). Based on the aforementioned query of T-Mobile data and subsequent analysis, the following cellphone number as found to be in the area of locations #1, #2, and #4: (414) 975-7826.

20. The account for (414) 975-7826 is listed to KENTREAL EVANS at 3618 North 14th Street, Milwaukee, WI 53206 with an activation date of November 29, 2022.

21. A review of the T-Mobile timing advance data for (414) 975-7826 for January 3, 2023, showed that this cellphone device was in the area of South 76th Street and West Becher Street in West Allis at or near the time of a reported shooting on that date at approximately 2:00PM. The recorded movement of cellphone number (414) 975-7826 showed it arrived in the shooting area between 1:58-1:59PM and then traveled away from that area.

22. A review of the T-Mobile timing advance data for (414) 975-7826 for February 19, 2023, showed that this cellular device was in the area of 3600 West Pierce Street, Milwaukee, Wisconsin from approximately 4:42AM to approximately 5:19AM, when it moved away from that area. Specifically, the timing advance data estimated this IMSI # was in close proximity to 3600 West Pierce Street from approximately 4:57AM until the

8

IMIS# appeared to move from the area at 5:19AM. T-Mobile placed estimated locations for this IMIS# to be near where the suspect white Jeep SUV was parked at the time of the robbery.

23.     After cellphone (414) 975-7826 left the area of 3600 West Pierce Street, it traveled briefly to the north side of I-94 and then traveled to the southside of I-94. According to T-Mobile records, this cellphone device was reported to be at or near 1621 South 24th Street at 5:32AM and was located at or near 1900 West Bruce Street at 5:37AM. The below diagram depicts the proximity of the two aforementioned locations as they relate to the location of a shooting at 1727 West Mineral Street that was reported at approximately 5:43AM.



9

24.     A review of the call detail records provided by T-Mobile showed that cellphone number (414) 975-7826 had multiple contacts with cellphone number (414) 526-1156 **[The Target Cell Phone**] on February 18, 2023.

25.     Additional review of the call detail records for (414) 975-7826 showed that this number had multiple contacts with the following phone number on February 18-19, 2023: (414) 788-9051.

26.     T-Mobile tower dump records showed that The Target Cell Phone called (414) 397-2342 at 4:40AM and 4:57AM on February 23, 2023, while (414) 397-2342 was at or near 3600 West Pierce Street.

27.     A query of the address 3618 North 14th Street, Milwaukee, Wisconsin showed a listed resident as Kentreal Tommie Lee EVANS (B/M, DOB: 5/11/2001).  EVANS is on active Wisconsin DOC supervision from a 2018 Milwaukee County felony conviction for driving a vehicle without consent, and EVANS' listed address is 3618 North 14th Street.

28.     A query of Wisconsin DOC archived inmate recorded calls showed that EVANS placed multiple calls to the following two numbers while he was incarcerated in 2022: (262) 676-8174 and (414) 369-0531.  T-Mobile call detail records for (414) 975-7826 showed multiple contacts with those same two numbers, which leads Your Affiant to further believe EVANS was likely in possession of (414) 975-7826 on February 19, 2023.

29.     Your Affiant queried the Wisconsin Department of Corrections (DOC) Inmate Solutions online system for potential calls placed by inmates to The Target Cell Phone in an attempt to identify the possessor of that cellphone number.  Your Affiant located multiple phone calls placed by multiple Wisconsin DOC inmates to The Target Cell Phone between the queried dates 12/01/2022 – 4/18/2023.  The Wisconsin DOC Inmate Solutions system showed that The

10

Target Cell Phone was associated with Geo OWENS, 4151 North 12th Street, Milwaukee, Wisconsin based on payment history for inmate calls.

30. Your Affiant further reviewed recorded Milwaukee County Jail calls and located a call placed by inmate #2022007557 on January 17, 2023, at 1:34PM to The Target Cell Phone. In that call, the inmate referred to the male who answered the phone as "Geo". Your Affiant also obtained records from AT&T related to Federal search warrant #23-889M related to The Target Cell Phone. According to AT&T records, The Target Cell Phone is registered to a "Rick James" at 4919 West Capitol Drive, Milwaukee, Wisconsin. A query of that name and address did not produce results. The email linked to the AT&T account is WUZYMOO@yahoo.com, which is an email associated with Geo OWENS (DOB:10/15/1997) according to a query of the law enforcement database TLO. The AT&T account has been active since June 11, 2021. The IMSI associated with the account is 310410360534308 and it is reportedly an iPhone 13.

31. Based on the aforementioned, I believed The Target Cell Phone to be possessed by Geo OWENS.

32. Your Affiant queried number (414) 309-9038 in TLO, which is an online law enforcement database after this number was found to be in the call detail records for The Target Phone during the matters under investigation on February 19, 2023. TLO search results showed that number (414) 309-9038 was associated with Jhony MARCHENA (DOB: 2/23/2002) at 3402 North 23rd Street, Milwaukee, Wisconsin. Your Affiant further reviewed a recorded DOC call placed by inmate #666785 to (414) 309-9038 at 12:43PM on January 19, 2023, and a male answered the call. In that call, the male explained to the inmate that the male had court on that same date and that he was trying to combine his criminal cases so that he could get a combined sentence. A query of Wisconsin CCAP showed that Jhony MARCHENA was in Milwaukee

11

District Court on January 19, 2023, regarding two separate open felony cases: 2022CF003603 (unlawful possession of a firearm, bail jumping, and possession of THC with intent), and 2022CF002146 (unlawful possession of a firearm and resisting arrest).

33.     Based on the aforementioned, I believe cellphone number (414) 309-9038 was likely possessed by Jhony MARCHENA on February 19, 2023.

34.     Your Affiant subsequently reviewed business records (to include call detail records, Timing Advance data, and cell tower data) previously provided by cellphone carriers (via legal process) to create a timeline summary of contacts and general locations of relevant cellphone devices related to the carjacking, abduction, shooting, and arson on February 19,2023. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Additionally, Timing Advance data provided by T-Mobile has a GPS accuracy radius that ranges from approximately 100-300 meters.  Information detailed in the timeline was derived from the following records:

    a.  T-Mobile records for (414) 975-7826, which is a cellphone number associated with Kentreal EVANS (ATF Item #12 and #28);

    b.  AT&T records for (414) 526-1156, which is a cellphone number associated with Geo OWENS (ATF Item #24 and #25) **The Target Cell Phone;**

    c.  Verizon records for (414) 309-9038, which is a cellphone number associated with Jhony MARCHENA (ATF Item #29);

    d.  T-Mobile records for (414) 788-9051 (ATF Item #27);

    e.  T-Mobile records for (414) 397-2342 (ATF Item #26);

    f.  Charter Communications records for (262) 283-2021, which is a cellphone number claimed by and listed to victim A.A. (ATF Item #23);

g.  T-Mobile records for cellphone tower dumps (ATF Item #10); and

h.  Surveillance video obtained near 3600 West Pierce Street (ATF Item #2).

35.    The following timeline is a summary and does not include all contacts or movements of the cellphone devices.

*All times are for February 19, 2023*

| | |
|---|---|
| 3:05AM | OWENS called (414) 397-2342 while (414) 397-2342 was at or near Potawatomi Casino in Milwaukee |
| 3:25AM | (414) 397-2342 called A.A. while (414) 397-2342 was at or near 1810 West Wisconsin Avenue |
| 3:26AM | (414) 397-2342 called A.A. while (414) 397-2342 was at or near 1810 West Wisconsin Avenue |
| 3:30AM | (414) 397-2342 called OWENS for over 6 minutes while (414) 397-2342 was at or near 1810 West Wisconsin Avenue |
| 3:33AM | OWENS called MARCHENA for over 4 minutes in an apparent 3-way call with (414) 397-2342 |
| 3:37AM | (414) 397-2342 called A.A. while (414) 397-2342 was at or near 1810 West Wisconsin Avenue |
| 3:46AM | MARCHENA called (414) 397-2342 |
| 3:51AM | (414) 397-2342 Called A.A. |
| 4:00AM-4:23AM | (414) 397-2342 had 17 contacts with OWENS and MARCHENA, and only with OWENS and MARCHENA |
| 4:17AM | Surveillance video near 3600 West Pierce Street captured images of a white Jeep SUV travel eastbound on West Pierce Street |
| 4:17AM | T-Mobile Timing Advance data showed EVANS' cellphone, as well as (414) 788-9051, were in close proximity to 3600 West Pierce Street at this time and then both devices subsequently traveled east |
| 4:23AM-4:26AM | (414) 397-2342 had 5 contacts with A.A. while (414) 397-2342 was in the area of West National Avenue and South 21st Street |

13

| | |
|---|---|
| 4:33AM | T-Mobile Timing Advance data showed (414) 397-2342 had traveled west from West National Avenue and South 21st Street |
| 4:33AM | MARCHENA called OWENS while MARCHENA utilized a cellphone tower and sector that provided coverage for an area that included 3600 West Pierce Street |
| 4:36AM | Surveillance video near 3600 West Pierce Street captured the arrival of the 2020 Chrysler 300 that was driven by A.A. and also occupied by C.B. and the third unknown male |
| 4:36AM | Timing Advance data showed that (414) 397-2342 arrived near 3600 West Pierce Street and stayed in that area until approximately 5:19AM |
| 4:38AM | Surveillance video captured the three occupants of the 2020 Chrysler 300 enter 3600 West Pierce Street |
| 4:42AM | OWENS called MARCHENA while MARCHENA utilized a cellphone tower and sector that provided coverage to an area that included 3600 West Pierce Street |
| 4:43AM-4:46AM | Surveillance video captured a white Jeep SUV travel by 3600 West Pierce Street on three separate occasions |
| 4:43AM | OWENS called (773) 640-3853 for over 14 minutes |
| 4:54AM | Surveillance video captured images of a white Jeep SUV park in the alley immediately east of 3600 West Pierce Street |
| 4:54AM-5:19AM | Timing Advance data showed EVANS' cellphone and (414) 788-9051 were in close proximity of 3600 West Pierce Street |
| 4:57:40AM | OWENS called (414) 397-2342 while that number was at or near 3600 West Pierce and OWENS was utilizing a cell tower located at 3950 North Holton Street, Milwaukee which was over 7 miles northeast of 3600 West Pierce Street |
| 4:57:56AM | MARCHENA called OWENS while MARCHENA utilized a cellphone tower and sector that provided coverage to an area that included 3600 West Pierce Street |
| 5:17AM | Surveillance video captured images of A.A., C.B., and the third unknown male exit 3600 West Pierce Street. The three males walked toward the Chrysler 300 and A.A. had opened the driver's door and C.B. was near the middle of West Pierce Street when four suspects emerged from the area of |

14

the white Jeep SUV and appeared to point firearms at the victims at which time the victims got on the ground. The video further showed C.B and A.A. were ushered by the suspects into the white Jeep SUV while the unknown third male appeared to be placed in the Chrysler 300 along with one suspect from the white Jeep SUV

| | |
|---|---|
| 5:19AM | Surveillance video captured images of the white Jeep SUV and the Chrysler 300 travel southbound on South 36th Street and out of frame |
| 5:19AM | Timing Advance data for EVANS, (414) 397-2342, and (414) 788-9051 showed that all three devices traveled away from 3600 West Pierce Street at this time |
| 5:21AM | Timing Advance data showed that (414) 397-2342 was in the area of 35th Street and I-94 |
| 5:21AM | Timing Advance data for EVANS' cellphone showed that this device was in the area of North 41st Street and I-94, Milwaukee |
| 5:22AM | MARCHENA called (414) 788-9051 while MARCHENA utilized a cellphone tower and sector that provided coverage for an area that included I-94 immediately north of American Family Field and while (414) 788-9051 was also in that same general area |
| 5:23:17AM | OWENS called MARCHENA while OWENS utilized a cellphone tower located at 3950 North Holton Street and MARCHENA utilized a cellphone tower and sector that provided coverage to an area that included North 37th Street and North Avenue |
| 5:23:56AM | (414) 788-9051 called OWENS while OWENS utilized a cellphone tower located at 3950 North Holton Street and (414) 788-9051 was located near North 38th Street and North Avenue |
| 5:24AM | Timing Advance data showed that (414) 397-2342 was near North 37th Street and North Avenue |
| 5:24AM | Timing Advance data showed that EVANS' cellphone was near North 37th Street and North Avenue |
| 5:28AM | Timing Advance data showed that (414) 397-2342 was near Virginia Street and South 6th Street |
| 5:28AM | Timing Advance data showed that EVANS' cellphone was near Virginia Street and South 6th Street |

15

| | |
|---|---|
| 5:30AM | OWENS called MARCHENA while OWENS utilized a cellphone tower located at 2325 North 50th Street |
| 5:31AM | MARCHENA called (414) 788-9051 while MARCHENA utilized a cellphone tower that provided coverage to an area that included I-894 and (414) 788-9051 utilized a cellphone tower and sector that provided coverage to an area that included 1727 West Mineral Street |
| 5:32AM-5:36AM | Timing Advance data showed that EVANS' cellphone was in the area of South 24th Street and Lapham Street, which was less than 1 mile southwest of 1727 West Mineral Street |
| 5:33AM | Timing Advance data showed that (414) 397-2342 was near the shooting scene at 1727 West Mineral Street |
| 5:34AM | OWENS called (414) 788-9051 while OWENS utilized a cellphone tower and sector that provided coverage for an area that included 1727 West Mineral Street |
| 5:35AM | Timing Advance data showed that (414) 397-2342 was near 1727 West Mineral Street. There was no Timing Advance data available again for this number until 7:08AM |
| 5:38AM | (414) 788-9051 called OWENS while OWENS utilized a cellphone tower that provided coverage to an area that included 1727 West Mineral Street and (414) 788-9051 appeared to be mobile as it was located near 16th Street and Canal at the beginning of the call and near North 36th Street and Llyod Street at the end of the call |
| 5:38AM | Timing Advance data showed that EVANS' cellphone was in the area of North 25th Street and St. Paul Avenue, which was less than 1.5 miles northwest of 1727 West Mineral Street |
| 5:42AM | (414) 788-9051 called MARCHENA |
| 5:43AM | 911 call for shooting near 1727 West Mineral Street – C.B. and A.A. fled from the white Jeep SUV at this location |
| 6:14AM | (414) 788-9051 called MARCHENA |
| 6:29AM | (414) 788-9051 called EVANS |
| 6:31AM | (414) 788-9051 called MARCHENA |
| 6:32AM | MARCHENA called (414) 788-9051 |

16

| | |
|---|---|
| 6:35AM | MARCHENA called (414) 788-9051 |
| 6:37AM | OWENS called EVANS while EVANS was located near North Oakland Avenue and East Kenmore Place and OWENS utilized a cellphone tower located at 3950 North Holton Street, which was less than 1.5 miles northeast of 227 East Townsend Street |
| 6:45AM | 911 call for vehicle fire at 227 East Townsend in Milwaukee – 2020 Chrysler 300 that had been stolen from Acosta at 3600 West Pierce |
| 9:01AM | OWENS called (414) 397-2342 |

36. Based on the above timeline, I believe the possessor of number (414) 397-2342 was likely the third unknown male who accompanied A.A. and C.B. to the party at 3600 West Pierce Street. Additionally, I believe the unknown third male was associated with OWENS, MARCHENA, EVANS, and the possessor of (414) 788-9051 because all of those numbers were in the call detail records for (414) 397-2342. The timing and sequence of calls, and the general locations of devices at critical times leads Your Affiant to believe there was a conspiracy to conduct the carjacking and subsequent crimes on February 19, 2023, amongst the following person: Geo OWENS [The Target Cell Phone], Jhony MARCHENA, Kentreal EVANS, the possessor of (414) 788-9051, and the possessor of (414) 397-2342.

37. Probable cause exists to believe that The Target Cell Phone possessed by OWENS will contain communications related to violations of Title 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime), Title 18 U.S.C. §§ 844(i) (use of fire to damage property affecting interstate commerce), and Title 18 U.S.C. §§ 844(h) (use of fire in furtherance of a federal felony).

38. In sum, there is probable cause to believe that OWENS participated in a conspiracy to commit the felony violations of federal law as outlined above and there is probable

17

cause to believe that the location information described in Attachment B will assist law enforcement in locating OWENS and The Target Cell Phone.

39.     In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate general location of the cellular device but is typically less precise that E-911 Phase II data.

40.     Based on my training and experience, I know that AT&T can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on AT&T's network or with such other reference points as may be reasonably available.

18

41.     Based on my training and experience, I know that AT&T can collect cell-site data about the Target Cell Phone.  Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

42.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

43.     Based on my training and experience, I know that wireless providers such as AT&T typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided

19

by the subscriber to pay for wireless communication service. I also know that wireless providers such as AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Phone's user or users and may assist in the identification of co-conspirators and/or victims.

**<u>AUTHORIZATION REQUEST</u>**

44. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c). The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment A for each communication to or from the Target Cell Phone, without geographic limit, for a period of thirty (30) days pursuant to 18 U.S.C. § 3123(c)(1).

45. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in

20

Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

46. I further request that the Court direct AT&T to disclose to the government any information described in Attachment B that is within the possession, custody, or control of AT&T. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Cell Phone on U.S. AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

47. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

21

# ATTACHMENT A

## Property to Be Searched

1.      The cellular telephone assigned call number 414-526-1156 (the "Target Cell Phone"),
whose wireless service provider is AT&T (the "Provider"), a wireless communications
company that is headquartered at 208 South Akard Street, Dallas, Texas; and

2.      Records and information associated with the Target Cell Phone that is within the
possession, custody, or control of AT&T, including information about the location of the
cellular telephone if it is subsequently assigned a different call number.

1

# ATTACHMENT B

## Particular Things to be Seized

### I.      Information to be Disclosed by the Provider

A.      To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A the following information about the customers or subscribers associated with the Target Cell Phone for the time period February 19, 2023, through the present:

    i.   Names (including subscriber names, usernames, and screen names);

    ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii.   Local and long-distance telephone connection records;

    iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v.   Length of service (including start date) and types of service utilized;

    vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

Case 2:23-mj-00107-WED     Filed 05/19/23     Page 24 of 32     Document 1

vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

B.  All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A. This information also includes: (i) any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN; (ii) Source and destination telephone numbers; and (iii) date, time, and duration of communication.

C.  To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Cell Phone on U.S. AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

3

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime), Title 18 U.S.C. §§ 844(i) (use of fire to damage property affecting interstate commerce), and Title 18 U.S.C. §§ 844(h) (use of fire in furtherance of a federal felony) have been committed by or aided by Geo OWENS during the relevant time period.

All information described above in Section I that will assist in locating Geo OWENS.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

4

CLERK'S OFFICE
A TRUE COPY
May 19, 2023
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

❏ Original          ❏

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>The cellular telephone assigned call number 414-526-1156<br>(the "Target Cell Phone"), whose wireless service provider<br>is AT&T, as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.    23    MJ    107 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the    Eastern    District of    Wisconsin
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before    6/2/2023    *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.    ❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Hon. William E. Duffin    .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☑ for   30   days *(not to exceed 30)*    ❏ until, the facts justifying, the later specific date of      .

Date and time issued:    5/19/2023 at 9:24 AM

*Judge's signature*

City and state:    Milwaukee, WI      Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

1. The cellular telephone assigned call number 414-526-1156 (the "Target Cell Phone"), whose wireless service provider is AT&T (the "Provider"), a wireless communications company that is headquartered at 208 South Akard Street, Dallas, Texas; and

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of AT&T, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

1

# ATTACHMENT B

## Particular Things to be Seized

## I.      Information to be Disclosed by the Provider

A.      To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A the following information about the customers or subscribers associated with the Target Cell Phone for the time period February 19, 2023, through the present:

    i.  Names (including subscriber names, usernames, and screen names);

    ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii.  Local and long-distance telephone connection records;

    iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v.  Length of service (including start date) and types of service utilized;

    vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

B.  All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night.  "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A. This information also includes: (i) any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN; (ii) Source and destination telephone numbers; and (iii) date, time, and duration of communication.

C.  To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government.  In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target Cell Phone on U.S. AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime), Title 18 U.S.C. §§ 844(i) (use of fire to damage property affecting interstate commerce), and Title 18 U.S.C. §§ 844(h) (use of fire in furtherance of a federal felony) have been committed by or aided by Geo OWENS during the relevant time period.

All information described above in Section I that will assist in locating Geo OWENS.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

4